IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CHARLES GAYHEART,

        Plaintiff,                Case No. 3:10-cv-401

vs.                                    Judge Thomas M. Rose

MICHAEL J. ASTRUE,          Magistrate Judge Michael J. Newman
Commissioner of Social Security,

        Defendant.

---

**ENTRY AND ORDER SUSTAINING THE COMMISSIONER'S OBJECTIONS (Doc. #14) TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS; AFFIRMING THE COMMISSIONER'S DECISION THAT GAYHEART IS NOT ENTITLED TO SOCIAL SECURITY DISABILITY BENEFITS AND TERMINATING THIS CASE**

---

Plaintiff Charles Gayheart ("Gayheart") brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Defendant Commissioner of Social Security (the "Commissioner") that he is not disabled and, therefore, not entitled to Social Security disability benefits. On October 6, 2011, United States Magistrate Judge Michael J. Newman entered a Report and Recommendations (doc. #13) recommending that the Commissioner's Decision be reversed and that benefits be awarded. The Commissioner subsequently filed Objections (doc. #14) and Gayheart responded to the Commissioner's Objections (doc. # 15). This matter is, therefore, ripe for decision.

Gayheart filed his application for Disability Insurance Benefits on December 16, 2005. He claimed to be disabled due to anxiety, panic disorder, bi-polar disorder and depression.

1

The Commissioner denied Gayheart's application and Gayheart appealed. Administrative Law Judge ("ALJ") Thomas R. McNichols, II then conducted three hearings and issued a decision denying Gayheart's application finding that Gayheart was not disabled as defined by Social Security Regulations. The Appeals Council denied Gayheart's request for review and Judge McNichols' decision became the Commissioner's final decision. Gayheart then appealed to this Court pursuant to 42 U.S.C. § 405(g). Gayheart appealed solely on the ground that the ALJ erred in according no controlling or deferential weight to the opinions of the treating physician in favor of a non-treating medical expert.

On appeal, the Magistrate Judge found that the ALJ erred by failing to give proper weight to Gayheart's treating sources and reversed the finding of the ALJ. The Magistrate Judge awarded disability benefits to Gayheart.

The Commissioner objected. The Commissioner argued that substantial evidence supports the ALJ's determination, that the Magistrate Judge improperly conducted a de novo review of the evidence, that the Magistrate Judge improperly recommended an award of benefits and that Gayheart was not disabled.

This Court's function is to determine whether the record as a whole contains substantial evidence to support the ALJ's decision. *Bowen v. Commissioner of Social Security*, 478 F.3d 742, 745-46 (6th Cir. 2007). This Court should not try cases de novo or resolve conflicts in evidence. *Brainard v. Secretary of Health and Human Services*, 889 f.2d 679, 681 (6th Cir. 1989).

The ALJ's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402

2

U.S. 389, 401 (1971)(citing *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson*, *supra*, at 401; *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law) against the ALJ/Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling and Stamping Company*, 306 U.S. 292, 300 (1939).

This Court must also determine whether the ALJ applied the correct legal criteria. *Bowen*, 478 F.3d at 745-46. This determination may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Id.* A reversal based on the ALJ's legal criteria may occur, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746(citing in part *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

In this case, the Magistrate Judge found that the ALJ erred by failing to give proper weight to Gayheart's treating sources. Specifically, the Magistrate Judge found that the ALJ accorded no controlling or deferential weight to Dr. Onady's opinions nor to the opinions of Ms. Fenske-Doyle, Gayheart's therapist from September 2006 through October 2007. The ALJ accorded substantial deference, instead, to Dr. Burban, the state agency's non-examining, non-treating Medical Expert. The Magistrate Judge found the ALJ's reliance on the opinion of the

3

Medical Expert to be unsupported by substantial evidence and the dismissal of the opinion of Dr. Onady to be erroneous for several reasons.

The Magistrate Judge also determined that substantial deference should be accorded to Dr. Onady's opinion that Gayheart's consumption of alcohol is not material to a finding of disability. Instead the ALJ deferred to Dr. Buban's opinion that alcohol was closely intertwined with Gayheart's mental issues and that any incapacity from performing work could be attributable to Gayheart's "excessive drinking."

The findings and opinions of treating physicians are entitled to substantial deference. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). More specifically, if a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *Blakely v. Commissioner of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009). As noted by the Sixth Circuit, "[t]he treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The ALJ must provide "specific reasons for the weight given to a treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Commissioner of Social Security*,

4

378 F.3d 541, 544 (6th Cir. 2004). Further, if the ALJ does not give the treating physician's controlling weight, the ALJ must consider a number of factors when deciding what weight to give. 20 C.F.R. § 404.1527(d). The factors to be considered are: the length, nature and extent of the treatment relationship; the frequency of examination; the medical specialty of the source; how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and any other factors which tend to support or contradict the opinion. *Wilson*, 378 F.3d at 544. The ALJ must consider these same factors when considering the weight to be given to the medical opinion of a non-treating source. 20 C.F.R. § 404.1527(d).

The ALJ provided specific reasons for the weight given to Dr. Onady's opinion. Dr. Onady was Gayheart's treating psychiatrist. The ALJ did not give Dr. Onady's opinions controlling or deferential weight because he concluded they were not well-supported by objective findings or other credible corroborating evidence and because they were inconsistent with other credible evidence.

The ALJ found that Gayheart saw Dr. Onady only once every 60 to 90 days for the purpose of medication maintenance and not for counseling. The ALJ noted that Dr. Onady apparently premised her gloomy assessments to some extent on Gayheart's reported panic attacks, but it was clear from the record that Gayheart's alleged anxiety had not prevented him from leaving home, driving, keeping medical appointments, visiting friends and neighbors and shopping with his wife. The ALJ further noted that Gayheart had not been hospitalized for any panic attacks.

The ALJ also noted that, in one report, Dr. Onady indicated that Gayheart had a fair ability to behave in an emotionally stable manner, to follow work rules and to maintain

5

concentration. According to the ALJ, these abilities seemed inconsistent with Dr. Onady's other ratings of Gayheart's functional capacity.

The ALJ also noted that Dr. Onady seems to have minimized the impact of Gayheart's alcohol abuse. Treatment records showed that Gayheart drank excessively and in amounts greater than he acknowledged at the hearings. The ALJ noted that Dr. Chiappone, along with Dr. Onady, thought that Gayheart's drinking was not material, but Gayheart seemed to have under-reported how much alcohol he was drinking.

The ALJ gave no controlling weight or substantial deference to the opinion of Jackie Thompson, a therapist for Gayheart for five months from October 2005 to February 2006. The ALJ determined from Gayheart's testimony, and other evidence, that Gayheart was able to go out in public places and had carried out routine chores around the home and outside. This information made Thompson's finding that the "claimant was unable to maintain" unreliable at best. The ALJ also determined that Thompson "clearly lacks the medical training to properly address claimant's reported physical problems" and Thompson's opinions appear to be based upon Gayheart's subjective allegations instead of being supported by detailed clinical data. The ALJ found Thompson's opinions to be inconsistent with other substantial evidence.

The ALJ accorded substantial deference to the opinion of Dr. Buban. Dr. Buban is the impartial Medical Expert who appeared and testified at the second and third hearings. At the February 10, 2009 hearing, Dr. Buban testified that the record documented Gayheart's history of depression, anxiety and personality disorders, but the record also described a history of alcohol abuse. Dr. Buban indicated that she had difficulty separating Gayheart's anxiety from his alcohol abuse.

6

According to the ALJ, at the next hearing on February 24, 2009, after having received updated medical evidence, Dr. Buban testified that recent evidence showed that Gayheart still had frequent panic attacks and a low frustration tolerance. Dr. Buban then indicated that Gayheart would have symptoms even if he did not use alcohol but she thought that Gayheart's mental impairment and alcohol abuse were intertwined. Dr. Buban recommended that Gayheart be limited to work with no production quotas or fast pace and with minimal contact with supervisors and co-workers, and no public contact.

The ALJ accorded substantial deference to Dr. Burban's opinion "based on her well-reasoned analysis of the evidence." The ALJ found that Dr. Burban's conclusions were generally consistent with the assessment by Dr. Demuth, a reviewing psychologist, and with the mental status findings of Dr. Flexman and Dr. Chiappone.

Gayheart had seen both Drs. Flexman and Chiappone, at the request of the Bureau of Disability Determination, for consultative psychological evaluations. Gayheart saw Dr. Flexman in February of 2006 and Dr. Chiappone in June of 2008.

The Magistrate Judge found that the Court must assume that the ALJ accorded no weight whatsoever to the opinion of Ms. Fenske-Doyle ("Fenske-Doyle"), Gayheart's therapist from September 2006 through October 2007. Gayheart dropped out of counseling after October 2007. Fenski-Doyle was a therapist at Comprehensive Counseling Service, the same organization represented by Dr. Onady. Although not specifically mentioning Fenske-Doyle, the ALJ did discuss the opinions of Dr. Onady who presumably was charged with Gayheart's treatment at Comprehensive Counseling Service. Also, Fenske-Doyle reported that Gayheart presented in a stable mood, was cooperative, had his thought process in tact and demonstrated a relaxed

7

behavior. She also reported that she practiced "reflective listening" and the symptoms reported by her were Gayheart's own subjective beliefs.

As previously mentioned, the ALJ did discuss the opinion of Jackie Thompson ("Thompson"), a therapist at Highview Center who saw Gayheart previously from October 2005 to February 2006. As the ALJ concluded with Thompson, he presumably concluded Fenske-Doyle also lacked the medical training to properly address Gayheart's reported problems. Also he concluded that Fenske-Doyle's findings were represented by Dr. Onady of the same organization.

The Court would agree that the ALJ was not required to accord any weight to Fenske-Doyle's opinion. Also, any reasonable finding by Fenske-Doyle were presumably included in Dr. Onady's opinions.

Next, the Magistrate Judge found that the ALJ's rejection of Dr. Onady's opinion in favor of the Medical Expert's opinion appears to be misguided because the Medical Expert testified that the record was void of any indication showing that panic attacks occurred at least once per week and the record is not void of such evidence. However, the Medical Expert recognized that Gayheart had reported that panic attacks were occurring. When asked if any listing was met or equaled, the Medical Expert responded:

> Well, it's difficult to say that the - - if we look at the 12.06 panic attacks, the - - by Social Security criteria, it needs to be documented what the intensity, frequency and duration are, and in order to meet the listing, there needs to be one per week. This again, intensity, that is not documented, in the treatment records.

(Tr. 589.) While there is evidence in the record that Gayheart self-reported panic attacks once or twice per week, there is also evidence in the record that the Medical Expert's opinion took this into consideration but was not misguided due to Gayheart's self-reporting.

8

Next, the Magistrate Judge found that the ALJ's reasoning regarding treatment notes from 2005-2006 contradicted Gayheart's reported anxiety and depression. Specifically, the ALJ reported that the Comprehensive Counseling notes show that Gayheart dropped out of counseling around June 2008. "Before he dropped out of counseling, he had many subjective complaints about depression and anxiety, yet he usually presented in 2005-2006 with stable mood and affect and was even relaxed on many visits." The Magistrate Judge points to other treatment notes from Comprehensive Counseling that find Gayheart to be anxious, edgy, nervous, depressed, isolating, angry and hopeless. However, while there may be evidence to the contrary, there is evidence in the record that supports the ALJ's findings on the Comprehensive Counseling treatment notes.

Finally, the Magistrate Judge makes much of the evidence regarding Gayheart's consumption of alcohol and concludes that Gayheart's consumption of alcohol does not preclude an entitlement to benefits. This conclusion is offered in support of Dr. Onady's opinion. However, the ALJ did not find that Gayheart's consumption of alcohol precluded him from receiving benefits. Specifically, the ALJ found that, "[e]ven considering his abuse of alcohol, the claimant appears capable of carrying out at least low stress work with limited interactions and concentration…"

The ALJ's decision is supported by substantial evidence and the ALJ has applied the correct legal criteria. Based upon the reasoning and citations of authority set forth in the Magistrate Judge's Report and Recommendations (doc. #11) and in the Commissioner's Objections (doc. #12) and Gayheart's Response (doc. #15), as well as upon a thorough de novo review of this Court's file, including the Administrative Transcript, and a thorough review of the

9

applicable law, this Court affirms the Commissioner's decision that Gayheart is not disabled and, therefore, not entitled to Social Security benefits.

WHEREFORE, based upon the aforesaid, the Commissioner's Objections to the Magistrate Judge's Report and Recommendations (doc. #14) are SUSTAINED. The Commissioner's decision that Gayheart was not disabled and, therefore, not entitled to benefits under the Social Security Act is AFFIRMED. Finally, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Nineteenth Day of January, 2012.

.                                                                                      **s/Thomas M. Rose**
                                                                                         _____
                                                                                         JUDGE THOMAS M. ROSE
                                                                                         UNITED STATES DISTRICT COURT

Copies furnished to: Counsel of Record